# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JENNIFER ZAYAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:16-CV-00230-CAN |
| | § | |
| COMMISSIONER, SSA, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this appeal under 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income Benefits [Dkt. 2]; [TR at 9]. On August 2, 2016, the case was referred to the undersigned for all further proceedings and entry of judgment in accordance with 28 U.S.C. §636(c) and the consent of the Parties. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the Administrative Record, the Court finds that the Commissioner's decision should be **REMANDED.**

### BACKGROUND

**I.     PROCEDURAL HISTORY OF THE CASE**

On December 20, 2010, Jennifer Zayas ("Plaintiff") filed an application for Supplemental Security Income Benefits ("SSI") under Title XVI of the Social Security Act [TR at 180-83] alleging disability due to seizures and anxiety [TR at 286, 316]. Plaintiff's claim was initially denied by Notice on February 28, 2011 [TR at 139-143]; and upon reconsideration on June 8, 2011 [TR at 149-152].

After the agency denied Plaintiff's applications initially and on reconsideration, Plaintiff requested an administrative hearing. On January 19, 2012, the Administrative Law Judge ("ALJ") held an administrative hearing [TR at 61-84, 109-10, 153]. On July 9, 2012, the ALJ issued a decision denying benefits [TR at 114-29]. Plaintiff requested review of the ALJ's decision, and the Appeals Council remanded the case to the ALJ on August 26, 2013 [TR at 135-37, 207].

ALJ Ralph Shilling then conducted a de novo administrative hearing on April 2, 2014 in Dallas, Texas [TR at 39]. Plaintiff appeared at the hearing with her attorney and testified [TR at 39]. The ALJ later issued an unfavorable decision [TR at 111]. Upon appeal, the case was remanded [TR at 35].

A further hearing was held on September 3, 2014 at which Plaintiff appeared, represented by counsel, and Kweli J. Amusa, an impartial medical expert, and Sugi Y. Komarov, an impartial vocational expert also appeared [TR at 13]. The ALJ then issued a partially favorable decision on October 8, 2014 [TR at 9-29]. The ALJ found Plaintiff "partially disabled" from November 14, 2011 to November 14, 2012, and not disabled from December 20, 2010 to November 13, 2011, and from November 15, 2012 to October 8, 2014 [TR at 13-29]. Plaintiff again requested review by the Appeals Council on October 24, 2014 [TR at 7]. The Appeals Council denied Plaintiff's request for review on February 24, 2016 [TR at 1- 7]. Based on the Appeals Council denial of review, the ALJ's February 24, 2016, decision serves as the Commissioner's final decision for purposes of judicial review pursuant to 42 U.S.C. §405(g).

II.  STATEMENT OF THE FACTS

   *A. Age, Education, and Work Experience*

Plaintiff was born on June 16, 1976, making her thirty-four years of age at the time she filed her application on December 20, 2010 [TR at 286]. Plaintiff asserts her onset date of

Report and Recommendation—Page 2

disability to be December 14, 2010 [TR at 286]. Plaintiff was a younger person at all points relevant to her application. *See* 20 C.F.R. § 416.963(d). Plaintiff completed the ninth grade and does not have a GED [TR at 87-88]. Plaintiff has past work experience as a home health aide, hospital food service worker, nurse assistant, and housekeeping/cleaner [TR at 28, 64, 325].

### *B. Relevant Medical Record Evidence*

Plaintiff's impairments include seizure disorder, major depressive disorder, anxiety disorder, and borderline intellectual functioning [TR at 16]. Plaintiff has a primary doctor, but often visits the emergency room (ER) due to financial issues [TR at 91]. Plaintiff sought frequent treatment for seizure disorder symptoms despite complying with treatment [TR at 19-21, 1078-1192, 1201-1397, 1412-18, 1432-57, 1464-1508, 1534-1643, 1685-97, 1759, 1817-1901, 1950-77, 1986-2010]. Medical records indicate that Plaintiff sought treatment for possible seizures in December 2010 and February, April, and May 2011 [TR at 16-17, 23-24, 444, 574, 630, 648, 865, 916]. Plaintiff was noncompliant with her anticonvulsant mediations [TR at 17, 24]. The medical records in fact reflect that Plaintiff had low Dilantin levels on February 8, February 13, May 8, October 21, and October 26, 2011 [TR at 624, 676, 866, 1016, 1075]. Despite adequate Tegretol levels in 2012, Plaintiff still had multiple ER visits.

#### *1. Emergency Room Treatment*

Plaintiff visited Denton Regional Hospital on December 8, 2010, after blacking out while driving [TR at 696]. The report states Plaintiff did not get into an accident after losing consciousness, but also notes Plaintiff had a seizure at work on December 6, 2010, in the presence of co-workers [TR at 697]. Plaintiff was released in stable condition [TR at 701]. Plaintiff visited Denton Regional Hospital again on December 10, 2010 after experiencing a seizure. Plaintiff's fiancé heard her fall, but did not witness seizure activity [TR at 679]. The report states Plaintiff

Report and Recommendation—Page 3

had what looked to be a "pseudo seizure" [TR at 682]. On April 12, 2011, Plaintiff visited emergency services at Denton Regional Hospital for a fever and seizure [TR at 646]. Plaintiff expressed no pain and attending physicians noted no present learning barriers [TR at 650]. Plaintiff visited Texas Health Presbyterian Hospital (Denton) on May 8, 2011, after having a seizure three days prior [TR at 879]. The record also shows visits on May 11, 2011, and May 15, 2011, following seizures and related injuries from falling [TR at 900, 906]. An ER record from October 28, 2011 shows Plaintiff complained of multiple seizures in the preceding few days [TR at 1078]. Plaintiff also visited the ER after having seizures January 12, 2012, February 1, 2012, March 8, 2012 [TR at 1119-1158]. Laboratory results show varying Dilantin levels in 2011 [TR at 1016-1021].

### 2. *Treating Source – Ikenna Adugba, M.D.*

Plaintiff's doctor, Dr. Ikenna Adugba completed a Seizures Medical Sources Statement on May 22, 2012, stating Plaintiff has convulsive seizures 0-1 times per month [TR at 1514-1516]. The Seizures Medical Sources Statement does not specify the time frame for its findings; it was submitted on May 22, 2012 and thus on its face does not present findings after that date [TR 1514 - 1516]. Dr. Adugba included other diagnoses of anxiety disorder and migraine headaches in the statement [TR at 1514-1516]. Dr. Adugba noted Plaintiff responds well to her prescribed medications Keppra, Tegretol, and Xanax. He acknowledged Plaintiff had missed some doses of seizure medication to explain Plaintiff's less than therapeutic blood levels of anticonvulsant medication [TR at 1514-1516].

### 3. *Examining Sources – Lawrence Sloan, Ph.D. and Lynn Wang, M.D.*

Lawrence Sloan, Ph.D. administered a full battery psychological exam for Plaintiff on April 28, 2012. *Id*. at 1398-1409. The record shows Plaintiff has a Full Scale IQ of 72, which is

in the range of Borderline Intellectual Functioning [TR at 1404]. Dr. Sloan noted Plaintiff had a poor stress tolerance and exhibited features of agoraphobia [TR at 1408]. Dr. Sloan notes that the Plaintiff's description of her symptoms was suggestive of a conversion disorder that presents as pseudo seizures. Dr. Sloan notes that this would be consistent with her report of no benefit from anti-seizure medication, the probable absence of significant decline of cognitive/memory functioning and the apparent relation to perceived stress [TR at 1405]. Plaintiff has a history of special education placement, limited educational achievement, and minimal occupational achievement.

On October 3, 2013, Dr. Lynn Wang interpreted an EEG to show body and head shaking, but no epileptiform abnormalities in Plaintiff [TR at 2137].

## III. THE HEARINGS

### 1. *Plaintiff's Testimony*

Plaintiff testified she had partial seizures in 1999, but was under no medication until after a motor vehicle accident on December 8, 2010 [TR at 41, 90-91]. She was hospitalized for three days following the accident, experiencing brain swelling and burst vessels in the eyes and brain [TR at 44, 95].

Plaintiff stated she was initially placed on Keppra, but could not afford it [TR at 91]. She was then placed on Dilantin, but had a bad reaction to the drug and switched to Tegretol [TR at 91]. Plaintiff said she missed several indigent care visits and corresponding bloodwork because she had no transportation [TR at 47]. Plaintiff has no other counselors or therapists, and stated Mental Health and Mental Retardation ("MHMR") would not see her because she is not severely depressed to the point of harming herself and/or others [TR at 96].

Plaintiff estimated she has seizures once or twice a month, and told the ALJ she was having auras at the hearing, acknowledging the warning signs (nausea, headache) for a potentially pending seizure [TR at 93].

*2. Medical Expert's Testimony – Dr. Kweli J. Amusa*

Dr. Kweli J. Amusa testified that medical evidence shows Plaintiff has a seizure disorder, citing her medical history and intermittent problems since a closed head injury in the 1990's, and increasing frequency in 2010 [TR at 97]. Dr. Amusa noted issues with compliance, which coincides with Plaintiff's missed doctor visits [TR at 97]. However, Dr. Amusa noted Plaintiff's increased visits to the emergency room for seizures in 2012 and adequate Dilantin and Tegretol levels during that time [TR at 97-98].

Dr. Amusa testified that listings are based on frequency and there is support to equal the listing [TR at 99]. There are two listings for seizure disorder: 11.02 for generalized and 11.03 for petit mal type seizures [TR at 99-100]. Dr. Amusa opined Plaintiff could equal under 11.02 for the closed period of November 14, 2011 to November 14, 2012 because the medical evidence showed that Plaintiff required frequent emergency treatment for seizure disorder symptoms despite medication compliance [TR at 96-102]. Dr. Amusa specifically noted that a treatment gap of at least six months in 2013 presents an issue for extension beyond November 2012 because listings require documentation of compliance with therapeutic levels of medication [TR at 96-102].

Dr. Amusa noted Plaintiff's strong component of anxiety and said her physical impairment would limit her to a medium RFC with the restrictions for seizures, meaning no climbing ladders, ropes, or scaffolds and avoiding hazardous machinery and heights [TR at 100].

### 3. Vocational Expert Testimony - Sugi Y. Komarov

Sugi Y. Komarov ("VE") testified as a vocational expert at the September 3, 2014 hearing [TR at 102]. The ALJ asked the VE to describe Plaintiff's past work and the VE identified four roles: a home health aide (DOT 354.377-014, medium, semi-skilled, SVP of 3), a hospital food service worker (DOT 319.677-014, medium, unskilled, SVP of 2), a nurse aide (DOT 355.674-014, medium, semi-skilled, SVP of 4), and a housekeeping cleaner (DOT 323.687-014, light, unskilled, SVP of 2) [TR at 102-103]. The ALJ then asked the VE to assume Plaintiff could lift fifty pounds occasionally and 25 pounds frequently, stand or walk for six hours per eight-hour day, and sit for six hours per eight-hour day, and avoid climbing, fumes, hazards, driving, and heights [TR at 103]. The VE responded that Plaintiff would be precluded from all past work [TR at 104]. The ALJ then inquired about other jobs an individual could perform with Plaintiff's same residual functional capacity, age, education, and experience [TR at 104]. The VE opined that such a hypothetical person could perform jobs with a light exertion level such as silver wrapper, and small product assembler [TR at 104]. Counsel for Plaintiff asked the VE if a person performing these jobs would be required to maintain a quota [TR at 106]. The VE responded that these jobs would likely involve a quota and failure to maintain the prescribed quota could result in termination [TR at 107].

## IV. FINDINGS OF THE ALJ

### 1. Sequential Evaluation Process

The Social Security Administration provides a five-step sequential evaluation process to determine whether a person is disabled [TR at 89]. *See* 20 C.F.R. § 404.1520. First, any claimant engaged in in substantial gainful activity at the time of his disability claim is not disabled [TR at 90]. *See* C.F.R. § 404.1520(b). Second, the claimant is not disabled if his alleged

Report and Recommendation—Page 7

impairment is not severe [TR at 90]. *See* 20 C.F.R. § 404.1520(c). Third, the claimant is disabled if the alleged impairment is determined severe, and the impairment is found in the listing provided in 20 C.F.R. Part 404, Subpart P, Appendix 1. 1520 [TR at 90]. *See* 20 C.F.R § 404.1520(d). Fourth, a claimant with a severe impairment not included on the listing is not disabled if he can perform his past work [TR at 90]. *See* 20 C.F.R § 404.1520(d). Fifth, a claimant is not disabled if he has residual functional capacity to perform other work outside of his past work. [TR at 90]. *See* 20 C.F.R § 404.1520(d). The burden to prove disability lies with the claimant for the first four steps and shifts to the Social Security Administration for the fifth step [TR at 90]. The process terminates at any step in which the claimant is determined not disabled [TR at 90].

### *2. ALJ's Disability Determination*

In applying the sequential evaluation process, the ALJ first found Plaintiff did not engage in substantial gainful activity since December 14, 2010 [TR at 16]. At step two, the ALJ determined Plaintiff suffered from the following severe impairments: seizure disorder, major depressive disorder, recurrent, mild to moderate anxiety disorder with features of generalized anxiety and agoraphobia, and borderline intellectual functioning [TR at 16]. 20 C.F.R § 404.1521. At step three, the ALJ sequentially outlined Plaintiff's medical record since her seizure in December 2010 and considered medical opinions offered in the record to determine Plaintiff's impairments equaled Listing 11.02 for epilepsy from November 14, 2011 to November 14, 2012 [TR at 22].

At step four, the ALJ determined Plaintiff is unable to perform relevant past work [TR at 28]. At step five, the ALJ determined that considering Plaintiff's age, education, work experience, and residual functioning capacity, there are jobs existing in significant number in the national economy that Plaintiff can perform [TR at 28]. The ALJ found Plaintiff's disability began

Report and Recommendation—Page 8

on November 14, 2011 and ended on November 15, 2012 [TR at 29]. The ALJ concluded Plaintiff had no disability from December 14, 2010 to November 13, 2011 and subsequent to November 15, 2012 [TR at 29].

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). Additionally, any conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above. 20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

Plaintiff identifies four issues for appeal: (1) the decision of the Commissioner that Ms. Zayas was disabled from November 14, 2011 through November 14, 2012 is not supported by medical evidence, (2) the decision of the Commissioner that medical improvement in Plaintiff's

Report and Recommendation—Page 9

condition occurred and that Plaintiff's disability ended on November 15, 2012 is contrary to the evidence, (3) the Commissioner erred in failing to follow the Treating Physician Rule and (4) the Commissioner erred in his evaluation of the vocational evidence. The Court surmises from the issues identified that Plaintiff challenges whether the ALJ erred at step three in concluding Plaintiff did not meeting Listing 11.02 before and/or after the closed period, whether substantial evidence supports the ALJ's RFC assessment (specifically whether the ALJ failed to follow the treating physician rule), and also whether the ALJ ignored the VE's testimony regarding allowable absences.

### 1. *Whether the ALJ erred when he concluded Plaintiff did not meet Listing 11.02 Before or After Closed Period*

The ALJ determined Plaintiff satisfied Listing 11.02 for epilepsy for a defined period of one year from November 14, 2011 to November 14, 2012 [TR at 22]. However, the ALJ determined Plaintiff did not satisfy the Listing outside of such closed period, citing less frequent seizures and medical improvement [TR at 25].

Plaintiff contends she consistently had seizures prior to the closed period, specifically from December 8, 2010 through 2011 [Dkt. 14 at 8]. Plaintiff also argues the medical history of seizures in 2011 is not substantially different from that in 2012, the year in which the ALJ determined Plaintiff satisfied the Listing [TR at 11].

In the Notice of Determination, the ALJ summarized Plaintiff's documented seizures in December 2010, February 2011, April 2011, May 2011, and December 2011 through March 2012 [TR at 17]. The ALJ also noted other issues, including head injuries, headaches, and anxiety [TR at 17-21]. In relation to mental impairments, the ALJ considered the "paragraph B" criteria were not satisfied as Plaintiff did not have sufficient "marked limitations" and "repeated" episodes of

Report and Recommendation—Page 10

decompensation [TR at 23]. The ALJ determined Plaintiff could not perform past relevant work, but could perform other jobs in the national economy given her age, education, work experience, and residual functional capacity [TR at 28].

The Commissioner contends Plaintiff did not submit sufficient evidence of the frequency of her seizures to satisfy Listing 11.02 outside of the closed period [Dkt. 17 at 8]. The Commissioner further points to Plaintiff's noncompliance with a treatment regime (i.e. - infrequent treatment and medication) to support the ALJ's determination [TR at 10]. With respect to Plaintiff's noncompliance, the record shows Plaintiff had low Dilantin levels on February 8, February 13, May 8, October 21, and October 26, 2011 [TR at 624, 676, 866, 1016, 1075]. In fact, January and August of 2011, Plaintiff told Drs. Robert Garrison and Adugba, respectively that she had run out of her Dilantin [TR at 559, 1053]. Plaintiff claimed that financial difficulty prevented her from refilling her Dilantin prescription but later admitted she had received financial assistance from an indigent care clinic but that she had missed her last appointment and had not made another one recently [TR at 47-48].

Medical Listing 11.02(A) requires that a claimant have grand mal seizures that occur more frequently than once a month despite at least three months of prescribed treatment. 20 C.F.R. § Pt. 404, Subpt. P, App. 1; *Rudd v. Colvin*, No. 4:14-CV-104, 2015 WL 5719615, at *2 (E.D. Tex. Sept. 28, 2015). In other words, Listing 11.02 requires evidence of a typical seizure pattern occurring more frequently than once a month in spite of at least three months of prescribed treatment. The burden of proof rests with Plaintiff to provide and identify medical signs and laboratory findings that support all criteria of a listed impairment. *Zebley*, 493 U.S. at 530; *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). The listings criteria are "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). A mere diagnosis of a condition will not

Report and Recommendation—Page 11

suffice. "For a claimant to show that his impairment matches a listing, it must meet all of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530.

Here, while there is no question Plaintiff suffered from seizures which limited her ability to perform work, she did not carry her burden, prior to the closed period, of proving she would still suffer seizures if she had been compliant with her medication and/or that such seizures occurred more frequently than once a month [TR at 46-47]. Thus, substantial evidence supports the ALJ's finding that Plaintiff did not meet Listing 11.02 prior to the closed period.

The ALJ also found that Plaintiff began experiencing improvement and her disability ended on November, 15, 2012, when she began regularly taking medication that controlled her seizures [TR at 25]. To determine when the disability, and therefore the closed period, ends, the ALJ must apply the medical improvement standard. *Teague v. Astrue,* 342 F. App'x 962, 963 (5th Cir. 2009). An ALJ may appropriately discontinue disability benefits when there is substantial evidence that "(1) there had been a medical improvement related to the ability to work, and (2) the individual is now able to engage in substantial gainful activity." *Id.* at 963–64. A "medical improvement" is any decrease in the medical severity of an impairment that was present at the time of the most recent favorable disability determination. *See* C.F.R. § 416.994(b)(1) (i); *Gardner v. Astrue,* No. 4:10–cv226, 2011 WL 2292179, at *3 (N.D.Tex. Apr.19, 2011). A medical improvement is related to a claimant's ability to do work when there has been a decrease in the claimant's impairment and an increase in the claimant's functional capacity to do basic work activities. *Teague,* 342 F. App'x at 964 (citing 20 C.F.R. § 404.1594(b)(3)). A finding that there has been a decrease in medical severity must be based on changes in the symptoms, signs, or laboratory findings associated with the impairment. C.F.R. § 416.994(b)(1)(I); *Gardner,* 2011 WL 2292179, at *3. The Commissioner

Report and Recommendation—Page 12

has the burden of proving the claimant is no longer disabled as of the cessation date. *Waters,* 276 F.3d at 718. In the present case, Plaintiff testified in multiple hearings that medication helped control her seizures and improved her condition [TR at 46-47; 91]. Her testimony was confirmed by Dr. Amusa, who having reviewed the totality of Plaintiff's medical records, testified that Plaintiff's subjective statements coupled with her records reflected that she experienced less severe seizure activity when compliant with medication [TR at 99]. Notably, the date Dr. Amusa opined Plaintiff should no longer be deemed disabled correlates and/or corresponds with the date Plaintiff began regularly taking medication [TR at 101]. Dr. Amusa also specifically noted that Plainitff's noncompliance with her medication regime led to increased seizure activity [TR at 97]. Finally, Plaintiff could not demonstrate that she had seizures more than once a month during the time she complied with her medication regime.

Under existing authority, the aforementioned facts provide substantial evidence for the ALJ's decision. Indeed, when courts find an ALJ's medical improvement decision is not supported by substantial evidence, it is generally because, unlike the present case, no medical evidence whatsoever supports the ALJ's finding. *See Garcia v. Colvin*, 3:14-CV-4204-L (BH), 2016 WL 1273461, at *15 (N.D. Tex. Mar. 31, 2016) ("given the lack of any testimony or opinions from physicians or experts or any objective medical evidence after 2009 showing that Plaintiff's epilepsy became decreased in severity such that he medically improved, the ALJ's decision is not supported by substantial evidence of medical improvement."); *Garza v. Astrue*, 3:11-CV-3545-G-BN, 2013 WL 796727, at *6 (N.D. Tex. Feb. 7, 2013) ("while the records do mention [p]laintiff's few statements indicating she was improving . . . nothing else in the record supports a conclusion of medical improvement"), *report and recommendation adopted*, 3:11-CV-3545-G BN, 2013 WL 818723 (N.D. Tex. Mar. 5, 2013). Thus, the ALJ's analysis satisfied the first prong of the medical

Report and Recommendation—Page 13

improvement test and he likewise properly applied the second prong of that test. *Teague*, 342 F. App'x at 963. The ALJ noted, in accord with Dr. Amusa's opinion, that when properly controlled, Plaintiff could do medium work activity with seizure restrictions [TR at 25]. Accordingly, the Court finds the ALJ properly applied the medical improvement test in determining that Plaintiff experienced medical improvement such that Plaintiff no longer satisfied Listing 11.02 (which formed the basis for the closed period of disability).

### 2. *Whether Substantial Evidence Supports the ALJ's RFC Assessment*

Plaintiff next contends the ALJ's assessment of her RFC, at step four, is not supported by substantial evidence because the ALJ failed to comply with the treating physician rule. Specifically Plaintiff contends the ALJ failed to give controlling weight to her treating physician without considering the six factors set forth in 20 C.F.R. § 404.1527(c). In the Fifth Circuit, the treating physician rule demands that the opinion of a claimant's treating physician on a medical issue be entitled to great weight. *Newton v. Apfel*, 209 F.3d. 448, 455-56 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3 558, 566 (5th Cir. 1995); *Greenspan*, 38 F.3d at 237 (5th Cir. 1994). Indeed, the treating physician's opinion on both the nature and severity of the claimant's impairment must garner controlling weight when it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995), *See* 20 C.F.R § 404.1527(d)(2). However, a treating physician's opinion is not conclusive and may be rejected when evidence supports a contrary conclusion. *Id*. The ALJ may assign little to no weight to an opinion when showing good cause. *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011). Good cause for assigning lower weight may include a conclusory questionnaire opinion and a lack of explanatory notes, supporting objective tests and examinations. *Perez v. Barnhart* 415 F.3d 457, 465-66 (5th Cir. 2005). SSA

Report and Recommendation—Page 14

regulations require the ALJ to "always give good reasoning" for the weight given a treating source's opinion in the decision. *See* 20 C.F.R § 404.1527(c)(2). If the treating physician's opinion is not given controlling weight, the ALJ must implicitly (if not explicitly) consider the following factors to decide weight given all medical opinions: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. *See* 20 C.F.R. § 404.1527(c)(2).

Plaintiff contends the ALJ failed to follow the treating physician rule in applying weight to Dr. Adugba's opinion [Dkt. 14 at 12]. Specifically, Plaintiff argues the ALJ did not review the factors in § 404.1527(c)(2) and in addition should have re-contacted Dr. Adugba regarding his opinions. *Id*. The Commissioner contends the ALJ properly weighed all medical opinion evidence in the record, including Dr. Adugba's opinion [Dkt. 17 at 13-17] and is not obligated to re-contact Dr. Adugba.

In the present case, the ALJ reviewed the Seizures Medical Source Statement completed by Dr. Adugba in which Plaintiff is stated to have seizures, anxiety disorder, and migraine headaches [TR at 20]. Dr. Adugba's statement mentioned Plaintiff had difficulty controlling the seizures because she missed doses and that Plaintiff would miss two days of work per month. *Id*. The ALJ evaluated Dr. Adugba's Seizure Medical Source Statement for the post May 22, 2012 timeframe as follows:

> A Seizures Medical Source Statement was filled out by Dr. Adugba on which the doctor stated claimant had seizures, anxiety disorder, and migraine headaches. The doctor stated claimant had convulsive or grand mal seizures with loss of consciousness, confusion, muscle strain, exhaustion, and difficulties communicating. The doctor opined that claimant could sit 6 hours in an 8-hour workday and stand/walk 6 hours in an 8-hour workday, and lift/carry 20 pounds. Claimant took Keppra, Tegretol, and Xanax with good response to the medications.

Report and Recommendation—Page 15

> Claimant had difficulty controlling seizures because she missed some doses. The doctor opined that claimant would miss about two days per month. Exhibit 26F. The claimant would not have been able to work on a regular and continuing basis because of her seizures as of May 2012 but the record does not support this prior to November 14, 2011. Therefore I partially accept this and give it some weight.
> [TR at 20].

Here, the ALJ did not wholly discount Dr. Adugba's opinion, but assigned some weight to the opinion as it was supported by the evidence of Plaintiff's seizure frequency, and medication and treatment compliance. The ALJ then assigned significant weight to a testifying non-examining source Kweli Amusa, stating:

> The Medical expert does not have a treatment of examining relationship with respect to the claimant, however, she has reviewed all of the medical record in this case, she listened to the testimony offered at the hearing, she is familiar with the rules of the program and (s)he has full knowledge of the program. Her opinions are supported by the evidence. I give her opinion regarding the impairments and limitations they would reasonably produce, significant weight in this matter.

[TR at 20-21]. Dr. Adugba also submitted a Physician's Statement in June 2012 noting Plaintiff had frequent seizures, was anxious, and may not be able to handle stress [TR at 20, 1511]. The ALJ again acknowledged and credited this opinion as supported by the record, stating "the statement and opinion is consistent with the record as of June 2012, but not prior to November 14, 2011, as the claimant was not having frequent seizures, so it is entitled to some weight but not significant weight for the entire time." [TR at 20].

The Commissioner argues that the ALJ met the SSA requirements with the aforementioned statements because he "narratively showed consideration of the other factors in a detailed discussion of the record evidence . . . ." [Dkt. 17 at 16].

But the record before the Court suggests no "narrative consideration" on the ALJ's part and the Court cannot otherwise infer that the § 404.1527(c)(2) factors were considered by the ALJ. Similar arguments have been put forth before and found wanting. For instance, in *Hill v. Comm'r*,

Report and Recommendation—Page 16

*SSA*, the Court rejected the Commissioner's argument that the ALJ properly considered the § 404.1527(c)(2) factors, when rejected the opinion of the treating physician in favor of a non-examining physician, simply because he believed the opinions of the examining physician "were not consistent with the record . . . ." 4:16-CV-00025-CAN, 2017 WL 1049624, at *6-8 (E.D. Tex. Mar. 20, 2017). The Court noted that the ALJ's discussion did not anywhere, narratively or otherwise, discuss the length of treatment, frequency of examination, or any discussion of the nature and extent of the treatment relationship. *Id*. at 6. Consequently, the Court found the ALJ could not reject the treating physician's opinion without first conducting a detailed analysis of the § 404.1527(c)(2) factors. *Id*. at 8; (citing *Shirsty v. Colvin*, No. 3:15-CV-1958, 2016 WL 3570508 (N.D. Tex. May 31, 2016)); *see also Gullette v. Colvin*, 3:14-CV-1497-BN, 2015 WL 4660968, at *6 (N.D. Tex. Aug. 6, 2015) ("Commissioner contends that the ALJ considered the length, nature, and frequency of Dr. Raffi's treatment and examination of Plaintiff. But no such analysis appears on the record.").

Likewise, the Court cannot assume that the failure of the ALJ to conduct the § 404.1527(c)(2) analysis was simply harmless error. Had the ALJ properly considered the opinions of Dr. Adugba, the ALJ may have reached a different result as to Plaintiff's disability period. *Hill*, 2017 WL 1049624 ("[t]he Court is unable to say what the ALJ would have done had he properly weighed all relevant evidence of record."); *Gullette*, 2015 WL 4660968 ("The ALJ's error here is not harmless because this Court cannot say what the ALJ would have done had she properly evaluated the treating physician's opinion . . . ."). Accordingly, this case should be remanded to the ALJ for consideration of the Dr. Adugba's opinions under the relevant factors.[1]

---

[1] Having decided that remand is necessary in this case, the Court does not reach the issue of whether the Commissioner erred in his evaluation of the vocational evidence.

Report and Recommendation—Page 17

## CONCLUSION

For the foregoing reasons, the Court finds that the decision is **REMANDED** to the Commissioner for further deliberation in accordance with this decision.

**SIGNED this 26th day of September, 2017.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE